# UNITED STATES DISTRICT COURT
# DISTRICT OF IDAHO

| | |
|---|---|
| DONNA D. BINGHAM,<br><br>Petitioner,<br><br>vs.<br><br>ANDREW SAUL, Commissioner of Social Security,<br><br>Respondent. | Case No.: 1:18-cv-00290-REB<br><br>**MEMORANDUM DECISION AND ORDER** |

Pending is Petitioner Donna D. Bingham's Petition for Review (Dkt. 1), appealing the Social Security Administration's final decision finding her not disabled and denying her claim for disability insurance benefits.[1]  *See* Pet. for Review (Dkt. 1).  This action is brought pursuant to 42 U.S.C. § 405(g).  Having carefully considered the record and otherwise being fully advised, the Court enters the following Memorandum Decision and Order.

## I. ADMINISTRATIVE PROCEEDINGS

On August 19, 2014, Petitioner Donna D. Bingham ("Petitioner") protectively applied for Title II disability and disability insurance benefits.  (AR 13.)  Petitioner alleged disability beginning August 18, 2014.  (*Id.*)  Her claim was denied initially on November 14, 2014 and then again on reconsideration on March 27, 2015.  (*Id.*)  On March 31, 2015, Petitioner timely filed a written request for hearing before an Administrative Law Judge ("ALJ").  (*Id.*)  Petitioner

---

[1] Andrew Saul became the Commissioner of the Social Security Administration on June 17, 2019.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew Saul is substituted in as the Respondent in this suit.  No further action need be taken to continue this suit by reason of the last sentence of 42 U.S.C. § 405(g).

**MEMORANDUM DECISION AND ORDER – 1**

appeared and testified at a hearing held on February 8, 2017 in Boise, Idaho. (*Id.*) Impartial vocational expert Polly A. Peterson also appeared and testified at the hearing. (*Id.*)

On June 19, 2017, ALJ Christopher R. Inama issued a decision denying Petitioner's claim, finding that Petitioner was not disabled within the meaning of the Social Security Act during the period from her alleged onset date through the date of the decision. (AR 24.) Petitioner timely requested review from the Appeals Council on August 14, 2017. (AR 156.) On May 16, 2018, the Appeals Council denied Petitioner's Request for Review, making the ALJ decision the final decision of the Commissioner of Social Security. (AR 1.)

Having exhausted her administrative remedies, Petitioner filed this case. She contends that "[t]he decision denying Petitioner's claim is not in accordance with the purpose and intent of the Social Security Act, nor is it in accordance with the law, nor is it in accordance with the evidence, but contrary thereto and to the facts and against the evidence." Pet. for Review 2 (Dkt. 1). Petitioner argues that the ALJ erred by (1) improperly rejecting the opinions of treating providers; (2) determining that Petitioner's allegations of pain and other symptoms were not consistent with the medical evidence of record without providing clear and convincing reasons; (3) dismissing third party testimony without providing germane reasons; and (4) assigning an RFC that was not supported by substantial evidence. *See generally* Pet'r's Mem. (Dkt. 11). Petitioner asks for reversal and a finding that she is disabled, with a remand for an immediate award of benefits. Pet. for Review 2 (Dkt. 1); Pet'r's Mem. 20 (Dkt. 11).

## II. STANDARD OF REVIEW

To be upheld, the Commissioner's decision must be supported by substantial evidence and based on proper legal standards. 42 U.S.C. § 405(g); *Trevizo v. Berryhill*, 871 F.3d 664 (9th Cir. 2017). Findings as to any question of fact, if supported by substantial evidence, are

conclusive. 42 U.S.C. § 405(g). In other words, if there is substantial evidence to support the ALJ's factual decisions, they must be upheld, even when there is conflicting evidence. *See Treichler v. Comm'r of Social Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014).

"Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012). The standard requires more than a scintilla but less than a preponderance (*Trevizo*, 871 F.3d at 674), and "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

With respect to questions of fact, the role of the Court is to review the record as a whole to determine whether it contains evidence that would allow a reasonable mind to accept the conclusions of the ALJ. *Richardson*, 402 U.S. at 401; *see also Ludwig*, 681 F.3d at 1051. The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Treichler*, 775 F.3d at 1098. Where the evidence is susceptible to more than one rational interpretation, the reviewing court must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record. *Ludwig*, 681 F.3d at 1051. In such cases, the reviewing court may not substitute its judgment or interpretation of the record for that of the ALJ. *Batson v. Comm'r of Social Sec.*, 359 F.3d 1190, 1196 (9th Cir. 2004).

With respect to questions of law, the ALJ's decision must be based on proper legal standards and will be reversed for legal error. *Zavalin v. Colvin*, 778 F.3d 842, 845 (9th Cir. 2015); *Treichler*, 775 F.3d at 1098. Considerable weight must be given to the ALJ's construction of the Social Security Act. *See Vernoff v. Astrue*, 568 F.3d 1102, 1105 (9th Cir. 2009). However, reviewing federal courts "will not rubber-stamp an administrative decision that

is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute." *Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987).

### III. DISCUSSION

#### A. Sequential Process

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a sequential process in determining whether a person is disabled in general (20 C.F.R. §§ 404.1520, 416.920) – or continues to be disabled (20 C.F.R. §§ 404.1594, 416.994) – within the meaning of the Social Security Act.

The first step requires the ALJ to determine whether the claimant is engaged in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). SGA is work activity that is both substantial and gainful. 20 C.F.R. §§ 404.1572, 416.972. "Substantial work activity" is work activity that involves doing significant physical or mental activities. 20 C.F.R. §§ 404.1572(a), 416.972(a). "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized. 20 C.F.R. §§ 404.1572(b), 416.972(b). If the claimant is engaged in SGA, disability benefits are denied regardless of her medical condition, age, education, and work experience. 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not engaged in SGA, the analysis proceeds to the second step. Here, the ALJ found that Petitioner did not engage in substantial gainful activity during the period from her alleged onset date of August 18, 2014 through the date of the ALJ's decision. (AR 15.)

The second step requires the ALJ to determine whether the claimant has a medically determinable impairment, or combination of impairments, that is severe and meets the duration requirement. 20 C.F.R. § 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" within the meaning of the Social Security Act if it significantly limits

an individual's physical or mental ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment or combination of impairments is "not severe" if it does not significantly limit the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1522, 416.922. If the claimant does not have a severe medically determinable impairment or combination of impairments, disability benefits are denied. 20 C.F.R. §§ 404.1520(c), 416.920(c). Here, the ALJ found that, as of the date of his decision, Petitioner had the following severe impairments: "Irritable Bowel Syndrome (IBS) / Collagenous Colitis." (AR 16.)

The third step requires the ALJ to determine the medical severity of any impairments; that is, whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the answer is yes, the claimant is considered disabled under the Social Security Act and benefits are awarded. 20 C.F.R. §§ 404.1520(d), 416.920(d). If the claimant's impairments neither meet nor equal a listed impairment, her claim cannot be resolved at step three and the evaluation proceeds to step four. 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the ALJ found that Petitioner did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (AR 18.)

The fourth step of the evaluation process requires the ALJ to determine whether the claimant's residual functional capacity ("RFC") is sufficient for the claimant to perform past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). An individual's RFC is her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments. 20 C.F.R. §§ 404.1545, 416.945. An individual's past relevant work is work she performed within the last 15 years or 15 years prior to the date that disability must be

established, as long as the work was substantial gainful activity and lasted long enough for the claimant to learn to do the job. 20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965. Here, the ALJ determined that Petitioner had the RFC:

> to perform light work, as defined in 20 CFR 404.1567(b), except she can tolerate uninterrupted standing and walking up to 30 minutes at a time and 3-hours out of an 8-hour workday. The claimant can sit for 1-hour at a time, for up to 8-hours in an eight-hour workday. The claimant can occasionally climb ramps and stairs but never ladders, ropes or scaffolds. The claimant can occasionally balance, stoop, kneel, crouch and crawl and has no manipulative limitations. The claimant should not be subjected to concentrated exposure of vibration and should avoid all exposures to hazards, such as unprotected heights and dangerous machinery. She cannot perform commercial driving. The claimant should work indoors within 150 feet from a restroom.

(AR 18.) Based on this RFC, the ALJ further found that Petitioner was capable of performing her past relevant work as a purchasing agent and as an insurance clerk. (AR 23–24.) The ALJ did not reach the fifth step of the analysis because his conclusion at the fourth step mandated a finding that Petitioner was not disabled.

Based on the finding that Petitioner could perform past relevant work at step four of the analysis, the ALJ ultimately concluded that Petitioner "has not been under a disability, as defined in the Social Security Act, from August 18, 2014, through the date of this decision." (AR 24.)

B.   Analysis

Petitioner raises four primary issues with the ALJ's decision. First, she argues the ALJ erred by improperly rejecting the opinions of treating providers. Second, she argues the ALJ erred by improperly rejecting her subjective testimony. Third, she argues the ALJ erred by improperly dismissing third party testimony. Fourth, she argues the ALJ erred by assigning an RFC that is not supported by substantial evidence. *See generally* Pet'r's Mem. (Dkt. 11). Each argument will be addressed in turn.

   1. **The ALJ Erred in Weighing the Opinions of Certain Treating Providers.**

**MEMORANDUM DECISION AND ORDER – 6**

Petitioner challenges how the ALJ weighed the opinions of treating providers Dr. Brian Story, Nurse Practitioner Jody Stark, medical expert Dr. John Daller, and examining physician Dr. John Casper. Pet'r's Mem. 8-13 (Dkt. 11). The Court considers each challenge in turn.

Petitioner accurately states the standard for how ALJs must weigh medical opinion evidence: opinions from treating sources are generally entitled to greater weight than opinions from non-treating sources, and opinions from medical sources who examine a claimant are generally entitled to greater weight than opinions from medical sources who did not examine a claimant. 20 C.F.R. § 404.1527(c)(1), (2). An ALJ must provide "clear and convincing" reasons to reject a treating provider's uncontradicted opinion, and "specific and legitimate" reasons to reject a treating provider's opinion when it is contradicted. *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983); *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991). The same standards apply when an ALJ rejects an examining provider's opinion. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995); *Gallant v. Heckler*, 753 F.2d 1450, 1454 (9th Cir. 1984). Opinions from other than acceptable medical sources may be rejected for "germane" reasons. *Turner v. Comm'r*, 613 F.3d 1217, 1224 (9th Cir. 2010).

### A. Dr. Story

A gastroenterologist who had been treating Petitioner for over two years, Dr. Story issued a medical opinion expressed in a completed form with the pre-printed title "Medical Assessment of Ability to Do Work-Related Activities (Physical)." (AR 561.) The four-page form contains information as to the existence and extent of various limiting effects caused by a claimant's medical impairments. The form is presented as a way for a medical provider to express his or her opinions as to a claimant's limitations rather than as a diagnostic or treatment tool for documenting medical signs.

Dr. Story opined on this form that, in his medical opinion, Petitioner can regularly work zero hours in a day. He hand-wrote on the form that Petitioner "has terrible chronic diarrhea and cannot work due to this" and that Petitioner is "unable to predict when and how often" and she is "unable to work due to uncontrollable diarrhea." (AR 558–559.) On the final page of the form, he wrote that Petitioner has "uncontrollable diarrhea that can happen thru out the day" and that Petitioner has "tried every known treatment and nothing has worked." (AR 561.) Regarding what medical findings support his opinion, Dr. Story wrote "Please see all of office visit notes." (*Id.*)

The ALJ gave "little weight" to Dr. Story's opinion "because a statement of work-abilities exceeds the expertise of the physician and is ultimately reserved to the Commissioner." (AR 21.) The ALJ also found that Dr. Story's "objective findings consistently showed normal physical examinations and negative laboratory results," although he did not expressly state this as a reason for rejecting Dr. Story's opinion. (*Id.*) The ALJ cited several medical records prepared by Dr. Story indicating normal or unremarkable findings, particularly in the first half of 2015. (*Id.*) In particular, the ALJ said that Petitioner reported to Dr. Story that she stopped working due to her "worsening conditions" in an office visit in March 2015, but a physical examination during that office visit "revealed overall unremarkable findings." (*Id.*)

This is not an accurate reflection of the record. The exhibit to which the ALJ cites is a 55-page collection of Petitioner's medical records from Idaho Gastroenterology Associates, where Dr. Story and other of Petitioner's treating providers practice. (AR 503–557.) The records in the exhibit range from March 6, 2015 through October 25, 2016, including two office visits in March 2015. Dr. Story performed a biopsy at the first of these visits, after he which noted that "[t]he biopsy material reveals active inflammation. There is epithelial injury and

**MEMORANDUM DECISION AND ORDER – 8**

attachment with increased numbers of intraepithelial inflammatory cells. The findings are consistent with an etiology of acute self-limited colitis." (AR 503.) At the second March 2015 visit Dr. Story performed a sigmoidoscopy, with unremarkable results. (AR 505.)

But, flatly contrary to the ALJ's statement, it was not until May 12, 2015 that Petitioner told Dr. Story she had "quit her job due to her worsening symptoms." (AR 508.) Moreover, tests Dr. Story ordered at that visit showed that Petitioner's stool had tested positive for fecal lactoferrin, "a marker for fecal leukocytes and an indicator of intestinal inflammation." (AR 513.) Thus, the ALJ misstated that Petitioner claimed she quit her job in March; she actually made that statement in May. But more significantly, the ALJ does not explain his basis for stating that "throughout 2015 … [Dr Story's] objective findings consistently showed normal physical examinations and negative laboratory results." (AR 21.) One of Petitioner's March visits "reveal[ed] active inflammation" – not a normal physical examination. And Petitioner's May visit resulted in a positive test for fecal lactoferrin – not a negative laboratory result. The fact that the ALJ did not address these results, while stating that "objective findings" were "consistently" normal or negative, puts his decision on shaky ground.

Petitioner also quotes case law holding that "physicians … may render opinions on the ultimate issue of disability—the claimant's ability to perform work." Pet'r's Mem. 9 (quoting *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014)). Moreover, the decision she relies upon notes that ALJs' weighing of medical evidence must be guided by regulations and case law. *Id.* Social Security regulations require that an ALJ consider "all of the following factors in deciding the weight [to] give to any medical opinion": the examining relationship, the treatment relationship (including the length of the treatment relationship and the frequency of examination, as well as the nature and extent of the treatment relationship), supportability, consistency,

**MEMORANDUM DECISION AND ORDER – 9**

specialization, and any other factors that might be relevant under the particular circumstances of the case. 20 C.F.R. § 404.1527(c).

Additionally, Social Security regulations provide that "[a] statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled." 20 C.F.R. § 404.1527(d)(1). An ALJ "will not give any special significance to the source of an opinion" on the issue of whether a claimant is unable to work. 20 C.F.R. § 404.1527(d)(3). However, these regulations do not provide that a medical opinion should be rejected merely because the provider opines on the ultimate issue of disability. But the ALJ in this case gave "little weight to [Dr. Story's] opinion because a statement of work-abilities exceeds the expertise of the physician and is ultimately reserved to the Commissioner of Social Security." (AR 21.) This was error to the extent it purported to reject the entirety of Dr. Story's opinion. It was within the ALJ's discretion to reject Dr. Story's ultimate opinion about whether Petitioner is disabled. But to broadly reject Dr. Story's overall opinion, the ALJ was obligated to consider the factors set out in the regulations. He did not do so.

In particular, the ALJ focused on the factors of supportability and consistency, finding that Dr. Story's opinion was not sufficiently supportable or consistent with the record in its entirety. It is questionable whether such findings were supported by substantial evidence, especially in light of the inconsistency, noted *supra,* that the ALJ omitted relevant details about Petitioner's medical records. But, as Petitioner contends, nothing in the ALJ's decision indicates that he appropriately considered Dr. Story's specialization as a gastroenterologist or his two-year treatment relationship with Petitioner.

The ALJ needed to provide clear and convincing reasons to reject Dr. Story's opinion. The only reasons he offered were that Dr. Story opined on an issue reserved to the Commissioner

**MEMORANDUM DECISION AND ORDER – 10**

and that Petitioner's objective findings were "normal" or "stable." These explanations do not constitute clear and convincing reasons. Petitioner's objective findings were not uniformly "normal," Dr. Story's opinion on the ultimate issue of disability was not improper, and the ALJ decision does not make clear how he weighed the factors required by the applicable regulation. Petitioner's petition will be granted on this issue as to Dr. Story.

## B. NP Stark

Next, Petitioner contends the ALJ erred by rejecting the medical opinion of treating provider Nurse Practitioner Jody Stark. Pet'r's Mem. 10–12 (Dkt. 11). The ALJ rejected NP Stark's opinion because she was not an "acceptable medical source" at the time[2] and because she "appear[ed] to diagnose the claimant on purely subjective complaints without conducting a thorough examination with a function-by-function assessment." (AR 21–22.) Petitioner argues that NP Stark should be regarded as an acceptable medical source because she was part of an "interdisciplinary team" that included an acceptable medical source. Pet'r's Mem. 10–11 (Dkt. 11). This argument fails because the regulation she cites, 20 C.F.R. § 416.913(a)(6), was modified in 2000 – long before she filed her claim – to delete the language on which she relies.

Because NP Stark was not an acceptable medical source, the ALJ needed only to provide "germane" reasons for rejecting her opinion. Using the same template as Dr. Story, NP Stark opined that Petitioner could regularly work two to three hours per day and would be absent from work eight to twelve days per month. (AR 599.) She said that Petitioner can only stand or walk one to two hours per day. (*Id.*) When listing medical findings to support her opinions, she

---

[2] Licensed Advanced Practice Registered Nurses, including nurse practitioners, are acceptable medical sources for impairments within their licensed scope of practice for claims filed on or after March 27, 2017. 20 C.F.R. § 404.1502(a)(7). This claim was filed prior to March 27, 2017, before this change in the definition of acceptable medical source.

**MEMORANDUM DECISION AND ORDER – 11**

noted, among other things, MRI and CT scans as well as neurosurgeon evaluations, physical therapy evaluation, and colonoscopy. (AR 599, 602.)

Yet the ALJ found that NP Stark "appear[ed] to diagnose the claimant on purely subjective complaints." (AR 21–22.) It is not clear from the ALJ's decision whether he overlooked NP Stark's reference to clearly objective diagnostic records or whether he considered them and, for some reason, rejected them. But because his decision does not address this discrepancy, it cannot be said that his treatment of NP Stark's opinion is supported by substantial evidence. Stated differently, his assertion that her opinion was based on purely subjective complaints is not a germane reason for rejecting such opinion, when the face of the opinion refers to objective medical records.[3] Petitioner's petition will be granted as to the ALJ's evaluation of NP Stark's opinion.

### C. Dr. Daller

Petitioner offers one paragraph of argument contending that the ALJ erred in his evaluation of the opinion of medical expert Dr. John Daller:

> Subsequent to the hearing, the ALJ sought the opinion of a medical expert, Dr. John Daller. (Tr. 636-645). The ALJ noted that Dr. Daller found Petitioner's irritable bowel syndrome did not rise to listing levels and that objective findings were normal. (Tr. 22). The ALJ failed to adequately address Dr. Daller's opinion regarding Petitioner's most limiting condition – chronic diarrhea. Dr. Daller noted, "would expect accommodation for bathroom use needed. Exam noted in exhibit 10F with type would have to allow flexibility in bathroom use." (Tr. 638). Dr. Daller also noted, "work schedule would have to accommodate bathroom breaks and doctor visit schedule." (Tr. 644). The logical conclusion of Dr. Daller's opinion is that Petitioner would be absent from work an unacceptable number of hours and/or days without an accommodation. However, Social Security Administration (SSA) does not take into account the possibility of "reasonable accommodation" in determining SSDI eligibility. *Cleveland v. Policy Management Systems Corp.*, 526 U.S. 795, 119 S.Ct. 1597.

---

[3] The ALJ's error here was overlooking or ignoring NP Stark's *assertion* that her opinion was based on objective medical records. Whether such records are in the record, and what they might contain, is immaterial to the question of whether the ALJ properly evaluated her opinion.

**MEMORANDUM DECISION AND ORDER – 12**

Pet'r's Mem. 12 (Dkt. 11). The Court perceives this as an argument that the ALJ erred by not adopting, or not recognizing the implication of, Dr. Daller's opinion that Petitioner's work schedule would have to accommodate bathroom breaks and doctor visits.

The ALJ afforded "some" weight to Dr. Daller's opinion overall, with parts of his opinion receiving great weight and some receiving little weight. (AR 22.) He did not speak to Dr. Daller's opinion that Petitioner's work schedule would have to accommodate bathroom breaks and doctor visits. (*See id.*)

The Court is not persuaded the ALJ erred in giving only some weight to Dr. Daller's opinion. Dr. Daller's opinion regarding an accommodation for bathroom breaks was a response to an interrogatory that read "[s]tate any other work-related activities, which are affected by any impairments, and indicate how the activities are affected. What are the medical findings that support this assessment?" (AR 644.) But Dr. Daller did not identify any particular medical justification to support his opinion and without any such mooring it was not error for the ALJ to omit any discussion of this particular portion of Dr. Daller's opinion. Petitioner's petition will be denied as to Dr. Daller.

**D. Dr. Casper**

Petitioner contends the ALJ erred by giving little weight to the opinion of examining physician Dr. John Casper that Petitioner would require occupational adjustments due to her diarrhea frequency. (AR 22.) The ALJ noted that Petitioner did not experience any diarrhea during Dr. Casper's fifty-minute examination, that Dr. Casper reported some of Petitioner's history seemed "implausible or contradictory," and that Petitioner's physical examination was, for the most part, normal and unremarkable. (AR 22–23.)

Petitioner argues that these do not meet the standard of clear and convincing reasons to reject Dr. Casper's opinion that Petitioner's chronic diarrhea would necessitate workplace accommodations. Because Petitioner's petition will be granted on the basis that the ALJ erred with respect to other opinions of record, any reconsideration will necessarily involve reweighing the opinions, including by evaluating their consistency with the record. Nonetheless, the Court ultimately concludes that the ALJ's decision is not supported by substantial evidence with respect to the weight assigned to Dr. Casper's opinion. A lack of diarrhea during one fifty-minute office visit, combined with a more or less normal physical examination at a single visit, simply does not constitute a clear and convincing reason to reject Dr. Casper's opinion, which – broadly consistent with other evidence of record – diagnosed Petitioner with "[c]hronic diarrhea of undetermined etiology." (AR 348.) The fact that Petitioner's symptoms were not apparent to one provider at one relatively short office visit does not provide a basis for rejecting Dr. Casper's opinion.

It is significant that Dr. Casper noted some of Petitioner's history seemed "implausible or contradictory," but that fact, standing alone, is not a clear and convincing reason to reject Dr. Casper's opinion as to the limiting effects of Petitioner's chronic diarrhea. Petitioner's petition will be granted as to Dr. Casper.

Thus, the ALJ erred in weighing the opinions of Dr. Story, NP Stark, and Dr. Casper. Any one of these errors is sufficient to warrant granting Petitioner's petition.

**2. The ALJ Erred when Assessing Petitioner's Allegations of Subjective Symptoms.**

Petitioner next contends the ALJ erred in evaluating Petitioner's testimony regarding her subjective symptoms. Pet'r's Mem. 13–17 (Dkt. 11). The ALJ found that Petitioner's "medically determinable impairments could reasonably be expected to produce the … alleged

symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (AR 20.) Petitioner argues that the ALJ's reasons for making this finding were that "Petitioner continued working after her alleged onset date; Petitioner presented to treatment providers in no acute distress and exams were normal; a stool sample submitted for C. diff. testing was rejected for not a liquid consistency; and Petitioner created and sold small concrete statues at outdoor markets." Pet'r's Mem. 14 (Dkt. 11) (citing AR 20–21).

After an ALJ has found that a claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, the ALJ must provide specific, clear and convincing reasons for rejecting the claimant's subjective reports of the intensity, persistence, and limiting effects of such symptoms. *Trevizo v. Berryhill*, 871 F.3d 664, 678–679 (9th Cir. 2017). Against this requirement, Petitioner challenges each of the ALJ's stated reasons for dismissing her subjective complaints. As to her working after her alleged onset date, she notes the ALJ does not discuss the relevance of that observation, and she cites record evidence showing that her earnings after her alleged onset date were *de minimis* and did not constitute substantial gainful activity. Because the ALJ failed to explain why it matters that Petitioner worked some small amount after her alleged onset date, this is not a specific, clear and convincing reason to reject her subjective complaints.

As to the fact that some of her records indicate normal exams and no acute distress, Petitioner points out that "[o]ccasional symptom-free periods … are not inconsistent with disability." *Id.* (quoting *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014)). Moreover, the ALJ does not cite any records from any providers suggesting Petitioner was malingering. To the contrary, the record is replete with examples of medical providers and specialists performing

numerous tests and procedures – some quite invasive – because Petitioner's complaints were taken seriously. In such a setting, the existence of some records showing a lack of acute distress and normal findings (contrasted with some records showing abnormal findings) does not constitute a specific, clear and convincing reason to reject Petitioner's testimony.

The ALJ also noted that in November 2014 Petitioner complained of having only one formed stool "in the past months," yet a laboratory stool testing sample the same month was returned because it "was not a liquid stool." (AR 20, 354, 356.) Petitioner argues that the ALJ ignored six other samples that were successfully tested, indicating they were liquid stools. However, those other tests occurred later, between December 2014 and December 2015. More to the point, the implication from the ALJ's decision is not that Petitioner does not suffer from chronic diarrhea. Rather, the implication questions her credibility because she recounted only one formed stool for months despite submitting a test sample that was not liquid in the same timeframe. Even so, the ALJ's decision presents this as an unstated implication rather than an express discussion of Petitioner's credibility. Indeed, the decision does not use the words "credible" or "credibility" at all.[4] Thus, the ALJ's rejection of Petitioner's subjective complaints due to a vague, implied lack of credibility based on one statement recorded by one provider does not meet the bar to constitute a "specific, clear and convincing reason" supporting such rejection.

Finally, Petitioner contends one of the ALJ's reasons for rejecting her subjective complaints was her hobby of creating and selling small concrete statues. The Court is not persuaded the ALJ cited this as a reason for rejecting Petitioner's testimony. The ALJ's decision does mention the hobby, but in each instance it is stated merely as a fact: "[t]he claimant also

---

[4] These are not magic words, but the absence of such words or their synonyms is particularly notable where the ALJ contrasted Petitioner's statements against the medical records as a basis for rejecting her subjective complaints.

**MEMORANDUM DECISION AND ORDER – 16**

testified to creating concrete statues as a hobby and occasionally selling them at shows"; "[i]n an office visit on June 2016, the claimant revealed she began with a new hobby of making concrete animal molds, which she sold at outdoor markets." (AR 20, 21.) Regardless, it does not constitute a specific, clear and convincing reason for rejecting her testimony.

More fundamentally, the lack of clarity whether the ALJ reasoned that the statue hobby impugned Petitioner's subjective complaints highlights a broader problem with his assessment. The ALJ found Petitioner's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record *for the reasons explained in this decision*." (AR 20, emphasis added.) Such wrap-up statements are commonly seen in ALJ decisions this Court has reviewed. But this decision differs in that the "reasons explained" are scattered throughout the decision rather than collected and organized near the statement. As Petitioner points out, this makes it difficult to identify which portions of the decision contain the ALJ's reasoning on this issue. But this also makes it more straightforward to conclude that the ALJ has not met the bar of providing "specific, clear and convincing reasons" to reject Petitioner's subjective complaints. Hence, the ALJ erred by improperly rejecting Petitioner's testimony, and her petition will be granted on this basis.

3. **The ALJ Did Not Err in Weighing Third Party Testimony.**

Petitioner contends the ALJ erred by improperly dismissing third-party opinions. Pet'r's Mem. 17–18 (Dkt. 11). She quotes an outdated regulation providing that "[d]isregard of the testimony of friends and family members violates 20 C.F.R. § 404.1513(e)(2) (1991)." *Id.* She argues the ALJ improperly disregarded third-party opinions of her brother and mother-in-law.

The applicable standard is not whether the ALJ disregarded such testimony. Rather, under the current regulations, the ALJ must only "consider" such opinions. 20 C.F.R.

**MEMORANDUM DECISION AND ORDER – 17**

§ 404.1529(c)(3). Respondent aptly points out that "there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision." Resp't's Mem. 6 (Dkt. 15) (quoting SSR 06-03p, 2006 WL 2329939 (Aug. 9, 2006)). Even so, "competent lay witness testimony cannot be disregarded without comment … [and] in order to discount competent lay witness testimony, the ALJ must give reasons that are germane to each witness." *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012) (internal citations and quotation marks omitted). Moreover, the ALJ need not "discuss every witness's testimony on an individualized, witness-by-witness basis. Rather, if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Id.*

Here, the ALJ expressly discussed the opinion of Petitioner's spouse (AR 19). He did not expressly discuss the opinions of her brother or mother-in-law, but he did cite to each of them individually after stating "I have also considered reports regarding the claimant's functionality provided by third-party sources." (AR 22.) He noted:

> The accuracy of the conclusions made by third-party sources is questionable because they are not medically trained to make exacting observations as to dates, frequencies, types, and degrees of medical signs and symptoms, or of the frequency or intensity of unusual moods or mannerisms. Moreover, by virtue of the relationship with the claimant, they cannot be considered a disinterested third party witness whose reports of restriction in functioning would not tend to be discolored by affection for the claimant and a natural tendency to agree with the symptoms and limitations the claimant alleges. While I grant some weight to these statements, they nevertheless do not evidence greater limitations that those already indicated.

(AR 22.)

Petitioner frames this as boilerplate that fails to establish that the ALJ considered the statements. Pet'r's Reply Mem. 5 (Dkt. 16). The Court is not persuaded. Although the ALJ did not discuss each of the third-party opinions separately, he did state that he had considered them

**MEMORANDUM DECISION AND ORDER – 18**

and he cited to them. (AR 22.) Moreover, the two opinions Petitioner mentions are each only one paragraph long and speak vaguely about Petitioner's "serious illness," "medical issues," "medical problems," and "illness." (AR 261, 262.) Such opinions do not contain "exacting observations" of Petitioner's symptoms and "by virtue of the relationship with the claimant, they cannot be considered a disinterested third party witness." Thus, Petitioner has not shown either that the ALJ failed to consider such opinions or that he failed to provide germane reasons for granting them "some weight." Petitioner's petition will not be granted on this issue.

4. **The ALJ Erred in Assigning Petitioner's RFC.**

Petitioner contends the RFC the ALJ assigned was not supported by substantial evidence because it failed to account for all of her limitations. Pet'r's Mem. 18–19 (Dkt. 11). Specifically, Petitioner argues that the ALJ's errors in rejecting medical and lay opinions and in rejecting her subjective complaints mean that the limitations stated in such opinions or complaints must be included in the ALJ's RFC determination.

The Court agrees that, to the extent the ALJ erred in his treatment of certain opinions and of Petitioner's subjective complaints, the RFC as stated in the ALJ's decision is not supported by substantial evidence. But this is not a separate basis warranting reversal of the ALJ's decision; rather, it is merely a practical effect that results from the ALJ having erred in other portions of the decision.

5. **The Appropriate Remedy**

Petitioner contends that further administrative proceedings would serve no useful purpose and she requests remand for an immediate award of benefits. Pet'r's Mem. 20 (Dkt. 11). However, the Court is not persuaded on this record that Petitioner has shown that she is disabled and that she is entitled to disability benefits. Rather, further administrative proceedings would

serve the useful purpose of allowing an ALJ to reconsider the record and apply the proper standards to evaluate whether Petitioner has met her burden of establishing that she is disabled.

## IV. CONCLUSION

Petitioner has shown that the ALJ committed reversible legal error by improperly rejecting certain medical opinions and by improperly rejecting her subjective complaints. Therefore, the ALJ's decision is not supported by substantial evidence and it is reversed. The Court declines to remand for an immediate award of benefits; the proper remedy is for Respondent to have an opportunity to consider the medical opinions and Petitioner's subjective complaints under the applicable standards.

## V. ORDER

Based on the foregoing, Petitioner's Petition for Review (Dkt. 1) is **GRANTED,** the decision of the Commissioner is **REVERSED**, and this action is **REMANDED** to the Commissioner of Social Security under sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.

DATED: September 30, 2019

_____
Honorable Ronald E. Bush
Chief U.S. Magistrate Judge

**MEMORANDUM DECISION AND ORDER – 20**